CHARLES T. OGLESBY, Respondent, v. WM. H. SMITH, Appellant.

### Kansas City Court of Appeals, December 2, 1889.

1. **Negligence**: PROXIMATE CAUSE : MUTUAL NEGLIGENCE : INSUFFICIENT LINES : DUTY OF LIVERYMAN. Plaintiff, a liveryman suing for damages to his carriage on the ground of the negligence of defendant's driver, cannot recover though such driver was negligent, if, but for the breaking of the lines furnished by plaintiff, the injury to the carriage would not have happened ; it is negligence *per se* in a liveryman to furnish lines insufficient under ordinary or extraordinary circumstances. No action lies for mutual negligence which is the approximate cause of the injury.

2. **Agency**: GENERAL OR SPECIAL : RATIFICATION : EVIDENCE. Where defendant sent his driver to get a team and carriage at one stable, but instead he got them at plaintiff's stable, and, while driving them home, the team runs off and injures plaintiff's carriage, whereupon plaintiff recovered the team, and sent it with another carriage by one of his own servants, and defendant learned of the accident and that the team was from plaintiff's stable, as he was about to get into the carriage, the fact of such acceptance while it does not constitute a ratification of the unauthorized act, if it was unauthorized, of his driver (an alleged special agent) in getting the team at plaintiff's stable, is a circumstance which might properly be considered in passing on the question, whether the driver was a special agent restricted to the other stable, or had original authority to get from defendant's stable.

*Appeal from the Johnson Circuit Court.*—HON. CHAS. W. SLOAN, Judge.

REVERSED AND REMANDED.

*Samuel P. Sparks*, for the appellant.

(1) Knapp was the special agent of the defendant, with only the authority to order the carriage and team of Poague, and defendant did not become liable to plaintiff by reason of his misfeasance for any damages he may have done. *Bartlett v. Sparkman*, 95 Mo. 136. It was incumbent upon every one dealing with Knapp to know the extent of his authority. Smith on Master and Servant [4 Ed.] pp. 259 (top), side 295. (*a*) There was nothing in the nature of the services or in the circumstances of the case justifying the disobedience of his plain instructions. (*b*) Conceding that Knapp was unskilful in the management of the team, he was not the agent of defendant at the time of the injuries complained of. The doctrine of respondent superior only applies where the negligence arises in the course of employment. Smith on Master and Servant, p. 282 (top). (2) To avoid the effect of the rule *supra*, resort was had in this case to the doctrine of ratification based solely on the fact of defendant using a carriage and team of Oglesby, after knowledge that Knapp had disobeyed his instructions and of the accident. This without more was insufficient basis for a ratification, and the court should have sustained the demurrer to the evidence. 37 Mich. 360; 102 Mass. 211. (3) The proximate—the efficient—cause of the injury was the fright of the team, notwithstanding the breaking of the reins was immediate in point of time; however, neither of these was due to any act of omission or commission of Knapp. Upon such state of facts plaintiff was not entitled to recover, and the court should have sustained the demurrer

Oglesby v. Smith.

to the evidence. *Sherman v. Favour*, 1 Allen, 191; *Henry v. Railroad*, 76 Mo. 288; *Lewis v. Railroad*, 54 Mich. 128; s. c., 23 Am. L. Reg. 604 (citing many cases by COOLEY, Justice); *Dunn v. Railroad*, 21 Mo. App. 188; s. c., 12 S. W. Rep. 1009 (Aug. 5, 1889); 2 Thomp. Neg. 1084; Whitaker's Smith's Neg. [1 Am. Ed.] pp. 23–38.

*J. M. Crutchfield*, for the respondent.

(1) A master is responsible for the acts of his servant, done either in the general scope of his employment or in the pursuit of the master's special business. The inquiry should be, whether at the time the servant commits the injury he was engaged in serving the master and carrying out his purpose. If he was, the master will be responsible, whether the wrong be occasioned by negligence or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner. *Schmidt v. Adams*, 18 Mo. App. 432; *Garretzen v. Duenckel*, 50 Mo. 104; *Howe v. Newmark*, 12 Allen, 49; *Mangan v. Foley*, 33 Mo. App. 250. (2) "The master is liable for the acts of his servant, if he expressly or tacitly assented to the rendition of the particular service by him. * * *" The fact that the servant disobeys the instructions of the master does not relieve the latter from liability. *Paint Co. v. Conlon*, 92 Mo. 221. (3) An innocent third person is not affected by private orders from a master to his servant, where the servant acts within the scope of his usual employment. Smith's Master and Servant, 291. (4) When a party claims, receives and retains what was obtained by an unauthorized use of his name, it amounts to a ratification. *Davis v. Krum*, 12 Mo. App. 279; *Arnold v. Spurr*, 130 Mass. 347; *Ely v. James*, 123 Mass. 36; *Wright v. Burbank*, 64 Pa. St. 247; *Frank v. Jenkins*, 22 Ohio St. 597; 1 Evans on Pr. and Agt. 75.

ELLISON, J.—This is an action for damages to plaintiff's carriage. The evidence on the part of plaintiff tended to show that defendant sent one Knapp to get a carriage and team from Poague & Co., livery stable keepers, but that, instead of getting them at such stable, he obtained them of plaintiff, who is engaged in the same business. That, after Knapp received the team, he had driven but a short distance through the streets, till one, or both, of the horses scared at a hog, which was being driven in the street, and shied out to one side.

That, while he was attempting to manage and control the horses, one of the lines broke, the carriage upset, and the team ran away.

Several instructions were refused for defendant as asked, but as modified by interlineation by the court, were given. We have examined these, and, excepting the fourth, cannot see that they were altered to defendant's prejudice, but, on the contrary, think the modification was proper. But the fourth instruction, concerning the lines, should have been given as asked. Considering the circumstances, and the subject to which it relates, it was mild enough as originally drawn. It is as follows, the italics being words added by the court:

"The court instructs the jury that it was the duty of plaintiff to have provided said Knapp with lines, or reins, of sufficient strength to hold, manage and control the horses, even in a case of fright, and Knapp could, without first having inspected the lines, have presumed and relied on the assumption that they were of such strength; and if you should find, and believe, from all the evidence in the case, that *said Knapp was not negligent or careless in the management of said team, and*, but for the breaking of the lines or reins, the injury and damage would not have happened, your verdict should be for the defendant."

If the proximate cause of the accident was the lines breaking, plaintiff cannot, and ought not to,

recover, even though defendant's driver was also careless in the management of the team. When both parties are negligent, and the negligence of each directly contributes to the injury, no action lies. "When there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained." *Huelsenkamp v. Railroad*, 37 Mo. 537–552.

If the team could have been controlled in its fright, if the lines had not broken, and thereby the damage resulted, plaintiff ought not to recover. It is the duty of the liveryman to furnish lines that will not break in the pull that may be made upon them in holding the team, either under ordinary or extraordinary circumstances. The more extraordinary the circumstances, the more necessity for lines which will not break. It is negligence *per se* in the liveryman to furnish lines with his team and carriage which will break by the pull of the driver in attempting to control the team in fright, and, when such negligence is the proximate cause of the accident, there should be no recovery.

When the accident happened, it appears that plaintiff recovered the horses, and hitched them to another carriage, and sent them to defendant by one of his own drivers; Knapp, as near as we can gather from the evidence, accompanying him. That defendant learned of the accident, and that the team was from plaintiff's stable, as he was about getting into the carriage. From this acceptance of the team, with knowledge of whom it was hired, it is attempted to make out a ratification of Knapp's act in getting the first conveyance, for the injury to which, this action was brought. We are not of the opinion that this would show a ratification of Knapp's unauthorized act, if it was unauthorized, in getting the first conveyance. It is certainly a ratification of hiring the conveyance which defendant used,

and is a circumstance which might properly be considered in passing on the question whether Knapp was in reality a special agent restricted to Poague's stable.

But we can discover no reason for holding that, because defendant accepted the last conveyance as coming from plaintiff, he thereby ratified the procuring the first conveyance. It seems to be conceded by the briefs that, if Knapp was a special agent, with special directions to procure the conveyance at Poague's stable, defendant would not be liable to plaintiff for defendant Knapp's unauthorized act in going to his stable; but that, if Knapp was defendant's general agent, he would be liable for his acts, notwithstanding his special instructions. When, therefore, defendant learned the team was from plaintiff's stable, and used it, it is a circumstance tending to show Knapp had original authority to get from that place, and no ratification would be necessary.

But, if Knapp had no such original authority, we cannot see how the fact of using the last conveyance could be held a ratification of the hiring of the first. Defendant might very well conclude that, as he had the last conveyance at hand, he would use it, and would, of course, be liable for its proper use and hire.

As the evidence seems to be confined to injury to the carriage, the words, "and team, or either of them," should be omitted from plaintiff's instruction, thereby placing it in harmony with the fourth on the measure of damages.

The judgment is reversed, and the cause is remanded. All concur